**WO**                          NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

ABC Sand and Rock Company Incorporated,

                    Plaintiff,

v.

Maricopa, County of, *et al.*,

                    Defendants.

No. CV-16-01129-PHX-JJT

**ORDER**

Plaintiff ABC Sand & Rock Co., Inc. ("ABC") filed a Motion for a Temporary Restraining Order with Notice and Preliminary Injunction (Doc. 2, Prelim. Inj. Mot.) against Defendants in this matter. Defendants are the County of Maricopa, the Maricopa County Flood Control District (the "District"), and individual Defendants and their spouses. The Board of Hearing Review ("BoHR") is an entity created by Arizona statute to review enforcement orders that the District's chief engineer issues. ABC has named as Defendants individual former and present members of the BoHR and their spouses, which the Court refers to collectively as "BoHR Defendants."[1] The remaining individual

---

[1] The BoHR Defendants include the following Board members and their spouses: Robert Dewayne Justice and Jane Doe Justice, Melvin Martin and Jane Doe Martin, Hemant Patel and Jane Doe Patel, Scott Ward and Jane Doe Ward, Wylie Bearup and Jane Doe Bearup, Richard Schaner and Jane Doe Schaner, Gregg Monger and Jane Doe Monger, Robert Larchick and Jane Doe Larchick, and Ray Dovalina and Jane Doe Dovalina.

Defendants and their spouses[2] were or are employees, officers, or agents of the District during the relevant period. Because these individuals and their spouses, Maricopa County, and the District are jointly represented, the Court refers to these Defendants collectively as the "District Defendants."

The BoHR Defendants filed a Response to ABC's Motion for a Temporary Restraining Order with Notice and Preliminary Injunction (Doc. 9, BoHR Defs.' Resp.), as did the District Defendants (Doc. 10, District Defs.' Resp.). Also at issue in this case are the following Motions: the BoHR Defendants' Motion to Dismiss (Doc. 25, BoHR Defs.' MTD), to which ABC filed a Response (Doc. 27, Pl.'s Resp. to BoHR Defs.' MTD) and the BoHR Defendants filed a Reply (Doc. 29, BoHR Defs.' Reply); and the District Defendants' Motion to Dismiss (Doc. 37, District Defs.' MTD), to which ABC filed a Response (Doc. 57, Pl.'s Resp. to District Defs.' MTD). The Court did not await the District Defendants' Reply for reasons that follow.

On April 21, 2016, the Court held a hearing, at which it denied ABC's request for a temporary restraining order. (Doc. 11.) On July 21 and 22, 2016, the Court held a Preliminary Injunction hearing and took the matter under review. (Docs. 42, 44.)

# I.    BACKGROUND

## A.    Factual Background

ABC is a sand and gravel mining operation along the Agua Fria River near the Phoenix metropolitan area that has been in operation since 1985. The District is responsible for operating and maintaining flood control works and storm drainage facilities. It may issue permits for operation in the floodplain area as well as adopt and enforce civil penalties for violations of its regulations. The District regulates and issues permits to mining operations like ABC as part of its floodplain management duties.

---

[2] The other individual Defendants and their spouses include: Timothy Phillips and Jane Doe Phillips, William Wiley and Jane Doe Wiley, Jack Guzman and Jane Doe Guzman, Mike Jones and Jane Doe Jones, Ed Raleigh and Jane Doe Raleigh, and Anthony Beuché and Jane Doe Beuché.

1      This case arises from a protracted on-going dispute between ABC and the District

2   regarding ABC's permission to mine in the floodplain. ABC alleges the issues began

3   around February 2011, when the owner of ABC, David Waltemath, sent a letter to the

4   District in which he voiced his concerns about the District's proposed new regulations.

5   (*See* Pl.'s Prelim. Inj. Hr'g Ex. 9.) In his letter, which ABC characterizes as "politically

6   charged," Mr. Waltemath laments the "crushing tide of debilitating regulations

7   accompanied by the constant barrage of costly new requirements, staggering increases in

8   fees, devastating assessments and a firestorm of crippling restrictions" that "has created

9   an insurmountable nightmare that has finally eliminated the opportunity to move

10  forward." (Pl.'s Prelim. Inj. Hr'g Ex. 9 at 1.) Mr. Waltemath continued, "[t]herefore, the

11  only action required for the [District] at this time is a simple summary approval,

12  renewing [ABC's] current permit." (*See* Pl.'s Prelim. Inj. Hr'g Ex. 9 at 1.)

13      ABC's then-current mining permit was set to expire around the same time in 2011.

14  ABC argues that pursuant to the District's historical practices and according to the then-

15  current Floodplain Regulations for Maricopa County (the "Regulations"),[3, 4] its mining

16  permit should have been deemed renewed when it paid the appropriate fees. Instead, the

17  District requested additional information from ABC, and on May 31, 2011, issued a

18  Notice of Violation—Cease and Desist Order ("NOV")—an enforcement violation

19  against ABC that stated ABC was engaging in activity with an expired floodplain use

20  permit. (*See* Pl.'s Prelim. Inj. Hr'g Ex. 15.) ABC contends that these actions were the

21  beginning of the District's retaliation against ABC in response to ABC's vocalization of

22  its political views.

---

[3] *See* Floodplain Regulations for Maricopa County §§ 501–03 (governing the process for obtaining an initial permit); §§ 1101–03 (governing enforcement procedures for violations of an existing permit), Flood Control District of Maricopa County (2006). (Pl.'s Prelim. Inj. Hr'g Ex. 8.)

[4] The Court takes judicial notice of the BoHR Orders, state court Orders, Floodplain Regulations for Maricopa County, and other court filings attached to the parties' filings and provided as exhibits at the Preliminary Injunction Hearing because they are matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Since then, ABC and the District have engaged in a dispute both in court and out of court as to whether ABC is entitled to continue its mining operations. ABC states that during the course of its interactions with the District, it believed it was operating under a valid 2011 to 2016 permit, which the District denies. ABC argues that it has continually attempted to comply with the District's requirements, but the District constantly changes the conditions that ABC must meet to obtain a permit. In response, the District contends ABC has not attempted to comply with permit requirements in good faith and it would be unsound to allow ABC to mine where requirements, including safety requirements, are unmet, notwithstanding that ABC has in fact continued to mine for the entire time from 2011 to the present day.

**B.      The 2011 NOV Enforcement Violation Case**

After the District issued the NOV in May 2011, ABC requested a hearing, which was held in September 2011 before Hearing Officer Harold J. Merkow. On October 11, 2011, Officer Merkow issued his Report and Recommendation to the District's Chief Engineer, Timothy Phillips. On November 16, 2011, Chief Engineer Phillips issued a Final Decision and Order in which he stated ABC was required to obtain a floodplain use permit and pay a fine of $1,000 per day from the date of the May 2011 NOV until the violation is resolved and the fine is paid in full. On December 1, 2011, ABC requested review of the Chief Engineer's Order and a hearing before the BoHR.

On January 25, 2012, the BoHR met with its then-attorney, Dean Wolcott, and Chief Engineer Phillips. During this meeting, remarks were made that ABC believes suggest the BoHR and the other individuals at the meeting were trying to avoid the issues ABC had raised and the burden ABC had become to them. ABC characterizes this meeting as an "*ex parte*" hearing. While Defendants concede that some comments made were inappropriate, they contend the meeting was not in bad faith and the BoHR was trying to learn about the hearing process because it was the first time it had held such a hearing.

The BoHR held a hearing on March 28, 2012, and on June 27, 2012, it issued its Order in favor of ABC and reversed the Order of the Chief Engineer. On July 31, 2012, the District appealed the BoHR's Order to the Maricopa County Superior Court, and in May 2013, the Superior Court remanded the matter back to the BoHR with instructions to provide findings of fact and conclusions of law. ABC appealed that decision and the Arizona Court of Appeals affirmed in July 2014, thus remanding the case back to the BoHR. On January 28, 2015, the BoHR issued its Final Decision and Order on Remand. It found that the submission of application fees alone does not constitute a sufficient application and thus, no effective permit was currently in place. In other words, on remand, the BoHR upheld the Chief Engineer's decision that ABC was required to obtain and maintain a floodplain use permit and pay the appropriate fees to do so. It also found, however, that the Chief Engineer's decision to assess a fine of $1,000 per day that ABC operated without a permit was arbitrary.

On March 4, 2015, ABC appealed the BoHR's second Order to the Maricopa County Superior Court. The Superior Court, on March 18, 2016, issued a decision slightly modifying the wording of the BoHR's Order, but otherwise affirming. On April 22, 2016, ABC appealed the Superior Court's decision to the Arizona Court of Appeals, and the appeal is pending.

## C.    The Parties' 2013 Federal Court Case

On December 18, 2012, ABC filed a state court action against Maricopa County, the District, and individual Defendants and their spouses affiliated with the District.[5] Defendants removed the case to this Court on January 9, 2013, and the case was assigned to District Court Judge Wake. On November 18, 2013, Judge Wake dismissed the case because he found the claims were not ripe, and the Ninth Circuit Court of Appeals affirmed with regard to ABC's federal claims. *See ABC Sand & Rock Co. v. Maricopa*

---

[5] These individuals include: Timothy Phillips and Jane Doe Phillips, Jack Guzman and Jane Doe Guzman, Mike Jones and Jane Doe Jones, Ed Raleigh and Jane Doe Raleigh, Dewayne Justice and Jane Doe Justice, Melvin Martin and Jane Doe Martin, Hemant Patel and Jane Doe Patel, Scott Ward and Jane Doe Ward, Wylie Bearup and Jane Doe Bearup, and Jane and John Doe county employees.

*Cty.*, No. CV-13-00058-PHX-NVW, 2013 WL 6059296, at *3–5 (D. Ariz. Nov. 18, 2013), *aff'd in part as modified sub nom. ABC Sand & Rock Co. Inc. v. Cty. of Maricopa*, 627 F. App'x 626 (9th Cir. 2015).

### D.    The 2015 NOV Enforcement Violation Case

On May 8, 2015, the District issued a second NOV against ABC. On March 7, 2016, after a hearing was held on the second NOV before Hearing Officer Merkow, Officer Merkow issued a recommended decision that Chief Engineer William Wiley enter an order directing, in part, that ABC immediately obtain an approved permit for its mining operations and cease and desist its operations until it obtains such permit. On March 21, 2016, Chief Engineer Wiley issued a Final Decision and Order requiring ABC to cease and desist mining operations in the floodplain of the Agua Fria River and to comply with relevant regulations by obtaining a floodplain use permit based upon a plan showing past and proposed operations within the floodplain of the Agua Fria River. The Order also required that ABC pay fines for certain periods of time.

ABC requested review of the Order, and the BoHR held a hearing on June 16, 2016. The BoHR issued a Final Decision and Order on July 1, 2016. It found ABC had continued to operate without a floodplain use permit since its last Permit for Short Duration expired in July 2012 and ordered that ABC obtain a permit if it wished to continue operations, thus upholding the cease and desist order. On August 4, 2016, after the Court held the Preliminary Injunction hearing in this matter, ABC appealed the BoHR's Order to the Maricopa County Superior Court.[6]

In sum, there are two pending actions that were ongoing when ABC filed the case in this Court—ABC's appeal of the Superior Court's decision to the Arizona Court of Appeals arising from the 2011 NOV enforcement action and ABC's appeal of the BoHR's decision to the Superior Court arising from the 2015 NOV enforcement action.

---

[6] The Court takes judicial notice of ABC's new action in Maricopa County Superior Court. *See Lee*, 250 F.3d at 689; *Borneo*, 971 F.2d at 248. ABC filed a Complaint on August 1, 2016, in which it alleges similar constitutional claims as those at issue in this case.

### E.     The Present Motions

ABC now brings a Motion for Preliminary Injunction. ABC contends that it is likely to succeed on the merits of its First Amendment retaliation, due process, equal protection, and Arizona Constitution and Regulatory Bill of Rights claims. (Prelim. Inj. Mot. at 5–16.) ABC initially requested that the Court enjoin the District from enforcing the Chief Engineer's March 21, 2016 Order and issue ABC a Permit of Short Duration for the remainder of ABC's permit application process. (Prelim. Inj. Mot. at 18.) In its Supplemental Briefing and at the Preliminary Injunction Hearing, ABC amended its requested preliminary injunction relief. It asked the Court to issue an injunction requiring Defendants to give ABC 45 days' notice "prior to filing or causing to be filed any action wherein the relief requested would enjoin, or have the practical effect of enjoining" ABC from continuing its mining operations. (Doc. 41-1 at 2.) In the alternative, ABC requested that the Court require the District to issue a Permit of Short Duration. (Doc. 41, Pl.'s Supp. Br. at 1.)

The BoHR Defendants move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). (BoHR Defs.' MTD at 5.) The BoHR Defendants' main arguments are that all personal claims against BoHR members should be dismissed on absolute immunity grounds and the Court should abstain on all official claims under *Younger* abstention. (BoHR Defs.' MTD at 5.)

The District Defendants also move to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), contending subject matter jurisdiction is lacking and ABC fails to state a claim upon which relief can be granted. (District Defs.' MTD at 2.) The District Defendants argue: 1) ABC's claims are not yet ripe; 2) ABC is barred by *res judicata*; 3) the Court lacks jurisdiction under the *Rooker-Feldman* doctrine; 4) ABC's claim for injunctive relief is barred; and 5) the Court should abstain under the *Younger* doctrine. (*See* District Defs.' MTD at 10–17.)

Before reaching the underlying merits of the parties' Motions, the Court must inquire into its subject matter jurisdiction and dismiss a case when jurisdiction is lacking.

*See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004); Fed. R. Civ. P. 12(h)(3). The Court finds the jurisdictional issues of ripeness and *Younger* abstention are dispositive and thus does not consider the parties' other arguments.

## II.   RIPENESS

Federal courts are limited to deciding "cases" and "controversies." U.S. Const. art. III, § 2. Two closely related components of the Article III case or controversy requirement are standing and ripeness. *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). To establish standing, "a plaintiff must have suffered an injury in fact that is 'concrete and particularized;' that can be fairly traced to the defendant's action; and that can be redressed by a favorable decision of the court." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). "While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* litigation may occur," and prevents courts from deciding cases prematurely. *Id.* (internal citations omitted) (emphasis in original); *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007). When a claim is contingent upon future events that may not occur as anticipated, or at all, the claim is not ripe for adjudication. *Bova*, 564 F.3d at 1096. This is because, "if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Id.*

Underlying all of ABC's claims and injuries is its allegation that the District engaged in vindictive and retaliatory actions against it. (*See* Doc. 18, Am. Compl. at 3.) ABC states the vindictive actions include indefensibly denying ABC's permit renewal in 2011, demanding compliance with permit requirements that have no basis, selectively imposing permit requirements on ABC, and continuously changing or failing to fully disclose permit requirements, making it impossible for ABC to renew its permit and/or obtain a new permit. (Am. Compl. at 3.) As stated, the District has taken two NOV cease and desist enforcement actions against ABC in response to what the District views as ABC's noncompliance. ABC contends these actions, and the appeals processes that followed, are also part of the District's vindictive and retaliatory acts against it.

ABC has appealed the two District enforcement actions taken against it, and those actions are now pending in the state courts. Because no final decision has been made as to whether ABC has been mining unlawfully and without a permit, and because ABC continues to engage in its mining operations, it is premature to conclude that ABC has suffered a concrete and particularized injury. This is not the first time the Court has arrived at this conclusion. In ABC's 2013 federal court action, Judge Wake found that because ABC had appealed the Superior Court's Order on the 2011 NOV action, ABC's claims—nearly identical to those here—were not ripe. Judge Wake stated the claims were "not fit for decision because the validity of Plaintiff's Plant 1 permit still is being decided by judicial review of the administrative proceedings." *ABC Sand & Rock Co.*, 2013 WL 6059296, at *4. Indeed, Judge Wake's statement continues to be true. As indicated above, the validity of that permit still is under judicial review before the Arizona Court of Appeals.

The Court thus finds Judge Wake's reasoning just as persuasive and applicable in the present case because ABC is now in the midst of the appeals process for both the 2011 and 2015 NOV enforcement actions. The Court acknowledges that the appeal and NOV enforcement action process has been extensive. ABC's issues are still not fit for decision, however, because they remain under judicial review and ABC has not yet suffered a concrete and particularized injury. As Judge Wake noted, this case is unlike *Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara*, 344 F.3d 822, 830 (9th Cir. 2003), where the Ninth Circuit found plaintiff's constitutional claims were ripe because he was deprived of commercial use of his land while awaiting a final decision on the relevant property permit. The court stated in *Carpinteria* the plaintiff would have been injured by the treatment he received through the procedure he contested—retaliation for exercising his First Amendment rights and restricting him from playing polo on his property for nine years while waiting for a major conditional use permit. The Court finds the present cause distinguishable. *See id.*

1    Here, ABC also contests the procedure it has had to undergo in its attempt to

2    renew and obtain a permit to mine. However, unlike *Carpinteria*, ABC has not been

3    deprived commercial use of its land and has not paid the fines the District assessed

4    against it in the NOVs. Thus, ABC has not shown that it has already suffered actual,

5    concrete and particularized injury. *See id*. at 830–31. ABC's ripeness defect from its 2013

6    federal court action remains, and because the 2015 NOV enforcement action is also under

7    judicial review, it is similarly not fit for decision by this Court. Because ABC has failed

8    to meet the constitutional component of ripeness, the Court may not exercise jurisdiction

9    and must dismiss ABC's claims. *See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir.

10   2010). Although the Court must dismiss ABC's claim on this basis, because the same

11   factors that render the matter unripe—the nature of ABC's claims and the posture of the

12   underlying state actions—also implicate *Younger* abstention, the Court addresses that

13   doctrine below.

14   **III.   *YOUNGER* ABSTENTION**

15   *Younger* abstention is a jurisprudential doctrine rooted in the principles of equity,

16   comity, and federalism. *See Steffel v. Thompson,* 415 U.S. 452, 460–73 (1974) (stating

17   the history and purposes of the doctrine); *Younger v. Harris*, 401 U.S. 37, 43–49 (1971);

18   (discussing the jurisprudential background of abstention); *San Jose Silicon Valley*

19   *Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091–

20   92 (9th Cir. 2008); *Gilbertson v. Albright,* 381 F.3d 965, 970–75 (9th Cir. 2004) (*en*

21   *banc*) (following the Supreme Court's application of the doctrine). The doctrine

22   establishes an exception to mandatory federal jurisdiction, and the Court must dismiss the

23   action under certain circumstances. *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617

24   (9th Cir. 2003).

25

26       In civil cases . . . *Younger* abstention is appropriate only when the state
         proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or
27       involve a state's interest in enforcing the orders and judgments of its courts,
         (3) implicate an important state interest, and (4) allow litigants to raise
28       federal challenges. If these "threshold elements" are met, we then consider

- 10 -

whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies. Each element must be satisfied, and the date for determining whether *Younger* applies is the date the federal action is filed.

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (internal citations and quotations omitted) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593–94 (2013)).

## A. Ongoing State Proceedings

The first requirement for *Younger* abstention is met. The United States Supreme Court has held that *Younger* abstention applies where a losing litigant has not exhausted its state appellate remedies. *Dubinka v. Judges of Superior Court of State of Cal. for Cty. of L.A.*, 23 F.3d 218, 223 (9th Cir. 1994) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607–11 (1975)). Here, there were ongoing state judicial proceedings stemming from the 2011 and 2015 NOV enforcement actions at the time ABC filed its Complaint in this Court on April 19, 2016 (Doc. 1). As of that date, the Superior Court had issued a decision on the 2011 action that ABC appealed three days after it filed its Complaint in this case, and the parties were awaiting their June 2016 hearing in front of the BoHR on the 2015 action. Thus, ABC was still pursuing its state appellate remedies and the proceedings were ongoing.

## B. Type of Cases in Which *Younger* Abstention Applies

The enforcement actions the District initiated against ABC are the type of proceeding that triggers *Younger* abstention. "[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). Those "exceptional circumstances" exist in three types of proceedings: 1) state criminal prosecutions; 2) certain "civil enforcement proceedings;" and 3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013).

The Supreme Court has applied *Younger* to instances of civil enforcement where state proceedings are "akin to criminal prosecution" in "important respects." *Sprint*, 134 S. Ct. at 592. As the Supreme Court described:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. *See, e.g.*, [*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34] (1982) (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (state-initiated administrative proceedings to enforce state civil rights laws); *Moore v. Sims*, 442 U.S. 415, 419–420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud); [*Huffman*, 420 U.S. at 598] (state-initiated proceeding to enforce obscenity laws). Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. *See, e.g.*, *Dayton*, 477 U.S. at 624 (noting preliminary investigation and complaint); *Middlesex*, 457 U.S. at 433 (same).

*Sprint*, 134 S. Ct. at 592.

In this case, a state actor, the District, initiated the enforcement actions against ABC via the issuance of the NOVs. The District did so to sanction ABC, the federal plaintiff, through the use of fines and cease and desist orders, and the District remains a party to the enforcement actions. The enforcement actions here are thus similar to those the Supreme Court has found were proper for *Younger* abstention. *See Sprint*, 134 S. Ct. at 592. Accordingly, the second *Younger* factor is also met.

### C.    Important State Interests

In considering the third *Younger* factor, the importance of the state interest "is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert*, 332 F.3d at 618 (citing *NOPSI*, 491 U.S. at 365). The State of Arizona has a significant interest in mitigating flood

- 12 -

hazards and accordingly, the District was created to adopt and enforce floodplain regulations consistent with the Director of Arizona Department of Water Resources's adopted criteria. *See* Floodplain Regulations for Maricopa County § 102, Flood Control District of Maricopa County (2014);[7] A.R.S. §§ 48-3601–650. The Floodplain Regulations for Maricopa County explain the Regulations were adopted to mitigate and avoid significant flood hazards. Specifically, the Regulations provide:

> The flood hazard areas of Maricopa County are subject to periodic inundation that may result in loss of life and property, health and safety hazards, disruption of commerce and governmental services, extraordinary public expenditures for flood protection and relief, and impairment of the tax base, all of which adversely affect the public health, safety, and general welfare.

Floodplain Regulations for Maricopa County §§ 101(A), 103. In accordance with the District's mandate and mission to promote safety, the Regulations set forth under what circumstances a floodplain use permit is required, which includes an entity's extraction of sand and gravel in certain areas. *See* Floodplain Regulations for Maricopa County § 401. Because of the flood hazards and county land and residents at stake, Arizona has an important state interest in regulating the floodplain and mining therein. The state proceedings implicate this state interest because they determine whether ABC has met the requirements for a floodplain use permit established to promote the state's safety interests, and whether ABC has been mining in accordance with the Regulations.

In addition, "[w]hether the state proceedings are 'judicial in nature' or 'quasi-criminal' also plays a role in assessing the significance of the state interest." *Baffert*, 332 F.3d at 618. Here, the BoHR held adjudicatory hearings, which are quasi-judicial, and ABC's permit was at issue, making the proceedings quasi-criminal. *See id*. These factors further support that the ongoing state proceedings implicate an important state interest. The Court finds the third *Younger* factor is met.

---

[7] Available at:
http://www.fcd.maricopa.gov/downloads/permitting/Floodplain_Reg_Book.pdf.

### D.    Opportunity to Litigate Federal Claims

The fourth *Younger* factor requires that the state proceedings allow litigants to raise federal challenges. The Supreme Court has held that even if underlying administrative proceedings do not provide litigants with the opportunity to bring their constitutional challenges, it is sufficient that constitutional claims may be raised in state-court judicial review of the administrative proceeding. *Dayton*, 477 U.S. at 629 (citing *Middlesex*, 457 U.S. at 436). Here, the Regulations provide for, and ABC has availed itself of, state-court judicial review of the BoHR decisions. *See* Floodplain Regulations for Maricopa County § 409. ABC does not cite any persuasive authority that it is barred from raising its constitutional challenges in state court. The Court finds the fourth *Younger* element is also met.

### E.    Exceptions to *Younger* Abstention

The Court also considers whether any exception to *Younger* abstention applies. The Court must examine whether the state proceeding demonstrates bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate. *Kenneally v. Lungren*, 967 F.2d 329, 332 (9th Cir. 1992). "Bias exists where a court has prejudged, or reasonably appears to have prejudged, an issue." *Id*. at 333. The party raising bias must overcome a presumption of honesty and integrity in those serving as adjudicators. *Id*. Bad faith typically means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction. *Baffert*, 332 F.3d at 621.

ABC argues that the BoHR members' actions demonstrate bad faith, bias, and disregard for ABC's constitutional rights and thus constitute an "extraordinary circumstance" preventing ABC from raising its constitutional claims. (Pl.'s Resp. to BoHR Defs.' MTD at 13.) In support of its bias argument, ABC points to statements made by BoHR members in an "*ex parte* hearing" that occurred in January 2012 while ABC's appeal of the Chief Engineer's Order was pending and before the BoHR hearing had occurred. ABC also states that it tried to raise the issue of bias at its March 2012

hearing before the BoHR, but the BoHR refused to hear ABC's constitutional arguments. The Court also heard argument regarding bias at the Preliminary Injunction hearing and reviewed the January 2012 meeting transcript. The Court is troubled by the inappropriate comments made at the January 2012 "*ex parte*" meeting, some of which suggest some Board members' predisposition against ABC. (*See* Pl.'s Prelim. Inj. Hr'g Ex. 33.) The Court finds, however, that when looking at the broader context of ABC's multiple hearings before the BoHR and Arizona state courts in the 2011 and 2015 NOV enforcement actions, ABC has not overcome the presumption of honesty and integrity in those serving as adjudicators. *See Kenneally*, 967 F.2d at 333. Nothing else in those hearings or events surrounding those hearings shows that ABC has been subject to bias. Indeed, the BoHR's June 2012 Order that issued after the March 2012 hearing wherein ABC tried to raise bias found in favor of ABC. Moreover, the recent BoHR Order recognized the District's faults and acknowledged that "the District has been at times less than clear in providing specific deadlines for ABC." (Doc. 40, Ex. A, BoHR Final Decision and Order, July 1, 2016 at 9.) The BoHR set forth recommendations for establishing deadlines in the future, thus acknowledging that both ABC and the District were at fault for misunderstandings. (Doc. 40, Ex. A, BoHR Final Decision and Order, July 1, 2016 at 9–10.) ABC also has and will be able to present its case to the Maricopa County Superior Court and the Arizona Court of Appeals and has presented no evidence of those adjudicators' bias. The Court acknowledges that the comments at the January 2012 BoHR meeting were inappropriate and disconcerting, but it finds that in light of the history of the BoHR's and state courts' review of ABC's case, ABC is unable to overcome the presumption of the adjudicators' honesty and integrity.

As for the District's bad faith, the District had a reasonable expectation of obtaining a valid "conviction" in both the 2011 and 2015 NOV enforcement actions. *See Baffert*, 332 F.3d at 621. The Court finds it was not clear whether ABC was permissibly mining in accordance with a valid permit and the Regulations at the relevant times. The Court does not advance that either the District or ABC was correct in its position when

the NOV actions were initiated. Rather, the Court finds that given the degree of uncertainty as to ABC's rights, the District had some reasonable expectation that ABC would be found out of compliance with the applicable Regulations.

## F.  Effect of Requested Relief

After the threshold elements are met, for *Younger* abstention to apply, "[t]he requested [federal court] relief must seek to enjoin—or have the practical effect of enjoining—ongoing state proceedings." *ReadyLink Healthcare*, 754 F.3d at 758. Although a "direct" interference is not a threshold requirement, there must be some interference with state court proceedings for *Younger* to apply. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 n.9 (9th Cir. 2007).

In its Amended Complaint, ABC requests the following injunctive relief:

> (1) Enjoin Defendants from continuing to violate ABC's state and federal constitutional rights; (2) enjoin Defendants from further violating Arizona's Regulatory Bill of Rights; (3) enjoin Defendants to honor the *de facto* permit they granted ABC in February 2015 for the duration of its current permit application process; (4) enjoin Defendants to process ABC's current permit application in accordance with Arizona's Regulatory Bill of Rights; and (5) enjoin the imposition of the arbitrary and capricious fine assessed on March 21, 201[6].

(Am. Compl. at 42–43.)

ABC's requested relief is inextricably intertwined with the ongoing state proceedings. ABC's federal claims are a constitutional challenge to the pending BoHR and state proceedings. In *Gilbertson*, the Ninth Circuit held that *Younger* principles applied to plaintiff's § 1983 claim because the constitutional issues raised in his federal complaint, including First Amendment retaliation, due process, and equal protection, "go to the heart of his opposition to the Board's action in the state proceeding, such that a federal court's decision on the merits of [plaintiff's] claims would have the same practical effect on the state proceeding as an injunction." 381 F.3d at 979–82. Similarly, ABC has raised the same constitutional claims that go to the heart of its opposition to the

District's initial action and the BoHR's subsequent actions. The Court's determination of those claims would interfere with the state proceedings as it "would frustrate the state's interest in administering its judicial system, cast a negative light on the state court's ability to enforce constitutional principles, and put the federal court in the position of prematurely or unnecessarily deciding a question of federal constitutional law." *Id*. at 980. In addition, ABC requests that the Court enjoin Defendants from engaging in unconstitutional conduct, which based on ABC's allegations includes the NOV enforcement actions and hence the pending state court proceedings. Thus, ABC's request would have the result of vacating the BoHR and state court decisions and halting the pending proceedings.

ABC also requests that the Court require Defendants to honor and process its mining permits and enjoin the imposition of fines, which are the precise issues of the ongoing state proceedings. ABC's requested relief as to fines, some of which the BoHR has upheld, would conflict with the BoHR's Order and prevent the Maricopa County Superior Court from affirming and enforcing the Order. The Ninth Circuit has held that where a requested injunction would prohibit a commission or other governmental entity from imposing a fine against plaintiffs, the relief sought by plaintiffs would interfere and effectively enjoin ongoing state proceedings, thus meeting the final *Younger* abstention requirement. *See City of San Jose*, 546 F.3d at 1095–96 (holding plaintiffs' requested relief against defendants to preclude them from enforcing a statute consequently prohibited the Elections Commission from imposing fines against plaintiffs and constituted the requisite interference or enjoining of state proceeding under *Younger*).

As to its permit, ABC requests that the Court require Defendants to honor their February 2015 "*de facto*" permit and process their current permit application in accordance with Arizona's Regulatory Bill of Rights. Such a determination would conflict with the BoHR's factual determination underlying its decision to uphold fines. It would also impede the state court's review of the facts on appeal because it conflicts with the BoHR's Order. ABC's requested relief disrupts the State's efforts to protect its

interests that underlie the Floodplain Regulations and to obtain compliance with those regulations, further supporting that the requested relief would interfere with the ongoing state action. *See Huffman,* 420 U.S. at 604–05 ("Similarly, while in this case the District Court's injunction has not directly disrupted Ohio's criminal justice system, it has disrupted that State's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws").

At the Preliminary Injunction Hearing and in its Supplemental Briefing, ABC amended its requested preliminary injunction relief. (Pl.'s Supp. Br. at 1.) It argued that its revised preliminary injunction request for 45 days' notice prior to the filing of any action that would enjoin or have the practical effect of enjoining ABC from its mining operations was so narrow that it did not enjoin or have the practical effect of enjoining the state proceedings under *Younger.* (Pl.'s Supp. Br. at 1.) As in the cases cited, the Court considers the effect of the ultimate requested federal action under *Younger*, not the requested relief in a preliminary injunction motion. Were the Court to adopt ABC's contention that it should only look at the preliminary injunction relief sought, it might be deciding the Preliminary Injunction Motion only to later find *Younger* abstention precluded the Court from exercising jurisdiction over the action at all. The Court also finds that despite ABC's contention, its requested relief does not threaten merely a "potential" for conflict with the state proceedings, but rather, for the reasons stated, is completely intertwined and conflicts with the state proceedings.

The Court thus finds that ABC's requested federal action would have the practical effect of enjoining the ongoing state proceedings.

## IV.  CONCLUSION

The Court finds it does not have jurisdiction over this matter because ABC's claims are not yet ripe. The Court also determines it must abstain under *Younger* because all of the *Younger* elements are met, no exceptions apply, and ABC's requested federal action would have the practical effect of enjoining the ongoing state proceedings.

Because the Court has found the case is not ripe, it will dismiss all of ABC's claims, including its monetary damages claim, and not issue a stay. *See Gilbertson*, 381 F.3d at 981 (directing courts to stay, as opposed to dismiss, where monetary damages are sought and *Younger* abstention is applied). In addition, because the Court finds it does not have jurisdiction, it does not reach the other arguments in Plaintiff's Motion for Preliminary Injunction and Defendants' Motions to Dismiss.

**IT IS THEREFORE ORDERED** denying Plaintiff ABC's Motion for a Temporary Restraining Order with Notice and Preliminary Injunction (Doc. 2).

**IT IS FURTHER ORDERED** granting the BoHR Defendants' Motion to Dismiss (Doc. 25) and the District Defendants' Motion to Dismiss (Doc. 37) on ripeness and abstention grounds. All other pending motions are denied as moot. The Clerk of the Court shall enter judgment accordingly and close this matter.

Dated this 29th day of August, 2016.

_____
Honorable John J. Tuchi
United States District Judge